# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VB ASSETS, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>   Defendant. | C.A. No. 24-839-MN |

### PLAINTIFF VB ASSETS, LLC'S NOTICE OF DEPOSITION OF DEFENDANT AMAZON.COM SERVICES LLC

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff VB Assets, LLC ("VoiceBox" or "Plaintiff") will take the deposition of Amazon.com Services LLC ("Amazon" or "Defendant"), through one or more of its officers, directors, or managing agents, or other persons who consent to testify on Amazon's behalf, with regard to the matters set forth in the attached Schedule A. VoiceBox requests that Amazon identify in writing at least seven (7) days in advance of the deposition, or such other time frame as agreed by the parties, the person(s) designated by Amazon to testify on its behalf, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will commence on a date to be mutually agreed by the parties by remote deposition means if mutually agreed by the parties, or at such other location mutually agreed upon by the parties. The deposition will take place pursuant to the Federal Rules of Civil Procedure and applicable Local Rules of the United States District Court for the District of Delaware before a qualified Notary Public or other officer duly authorized by law to administer oaths, and will continue day to day, excluding weekends and holidays, until completed with such

adjournments as time and place that may be necessary. The deposition will be recorded by stenographic means and will be audiotaped and/or videotaped.

VoiceBox reserves its rights to serve additional deposition topics on different subject matter or based on its receipt of additional discovery under investigation.

Dated: May 20, 2025

*Of counsel:*

James C. Yoon
Ryan R. Smith
WILSON SONSINI GOODRICH
& ROSATI
650 Page Mill Road
Palo Alto, CA 94304
*jyoon@wsgr.com*
*rsmith@wsgr.com*

Matthew A. Macdonald
Jamie Otto
953 East Third Street, Suite 100
Los Angeles, CA 90013
*matthew.macdonald@wsgr.com*
*jotto@wsgr.com*

Mikaela E. Evans-Aziz
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
*mevansaziz@wsgr.com*

David Greenbaum
GREENBAUM LAW LLC
210 Allison Court
Englewood, NJ 07631
*david@greenbaum.law*

**SMITH, KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 North West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
*nbelgam@skjlaw.com*
*dtaylor@skjlaw.com*

*Attorneys for Plaintiff VB Assets, LLC*

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. "COMPLAINT" means the complaint filed (Dkt No. 1) of the above-captioned case.

2. "ACTION" means C.A. No. 1:24-cv-00839-MN in the United States District Court for the District of Delaware.

3. "YOU," "YOUR," or "AMAZON" means Defendant Amazon.com Services, LLC their predecessors and successors, subsidiaries and related companies and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, entities they were formerly known as, and others acting or purporting to act on its behalf or subject to its control.

4. "VOICEBOX" means VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. their predecessors and successors, subsidiaries and related companies and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, entities they were formerly known as, and others acting or purporting to act on its behalf or subject to its control.

5. "PLAINTIFF" or "VB ASSETS" means Plaintiff VB Assets, LLC.

6. "the '249 Patent" refers to U.S. Patent No. 10,297,249.

7. "the '699 Patent" refers to U.S. Patent No. 10,755,699.

8. "the '385 Patent" refers to U.S. Patent No. 11,087,385.

9. "the '758 Patent" refers to U.S. Patent No. 11,080,758.

10. "the '025 Patent" refers to U.S. Patent No. 9,502,025.

11. "ASSERTED PATENTS" collectively refers to the '249 Patent, '699 Patent, '385 Patent, '758 Patent, and '025 Patent.

12. The term "RELATED PATENTS/APPLICATIONS" means any and all patents, patent applications and/or patent publications that (i) claim priority from any of the ASSERTED

PATENTS, (ii) are identified as priority for any of the ASSERTED PATENTS, or (iii) claim priority to any application to which any of the ASSERTED PATENTS claims priority.

13. "ACCUSED PRODUCTS" collectively refers to any PRODUCT or service that VB ASSETS has accused of infringing one or more claims of the ASSERTED PATENTS, including those identified as accused products in the March 4, 2025 Initial Infringement Contentions, including but not limited to:

    a. Amazon's Alexa and Alexa Plus cloud-based voice service sometimes referred to as Alexa Voice Service, and the software implementing Amazon's Alexa and Alexa Plus, including Tools, APIs, reference solutions, and documentation;

    b. Amazon's devices that access or connect to Alexa and Alexa Plus, including Amazon's Echo product line (for example and without limitation, all models and generations of Echo, Echo Dot, Echo Pop, Echo Studio, Echo Glow, Echo Flex, Echo Input, Echo Frames, Echo Show, Echo Plus, Echo Auto, and Echo Look,) including the devices listed in AMZ_VB_00046652, AMZ_VB_00214664, AMZ_VB_00214679, AMZ_VB_II_00000313, AMZ_VB_II_00000366 and AMZ_VB_II_00000418;

    c. Amazon's clients that access or connect to Alexa and Alexa Plus, including, Amazon Common Software for Devices, Amazon Device SDKs, Alexa Connect Kit (ACK), Alexa Gadgets Toolkit, Alexa Auto SDK, Amazon.com website, alexa.amazon.com, amazon.com/wholefoods, Amazon's Alexa apps, Music apps, Prime Now and Shopping apps on a smartphone, tablet, mobile device, or other computing device;

    d. Any other Amazon device, app, or instrumentality that includes, provides access to, connects with, or works with Alexa and Alexa Plus (for example and without limitation, all models and generations of Amazon Voice Remote, Amazon Tap, Amazon Dash Wand, AmazonBasics Microwave,

        Amazon Smart Oven, Amazon SmartPlug, Amazon Fire TV Sticks, Amazon Luna Controllers, Amazon Fire TVs, Amazon Fire TV Cubes, Amazon Fire and Fire HD tablets), including the products listed in AMZ_VB_00046652, AMZ_VB_00058053-AMZ_VB_00058054, AMZ_VB_00214664, AMZ_VB_00214679 and AMZ_VB_II_00000313 AMZ_VB_II_00000366 and AMZ_VB_II_00000418;

e. Third-party products that access or connect to Alexa and Alexa Plus or have Alexa built-in or are Alexa-enabled, including the products listed in AMZ_VB_00046651 and AMZ_VB_00046653 and AMZ_VB_00046654, Alexa built-in speakers, soundbars, audio/video receivers, headphones, personal computers, automotive head units, car chargers, gadgets, smart toys, smart clocks, and any other third-party device, app, or instrumentality that includes, provides access to, or works with Alexa;

f. Alexa Skills, Alexa Skills Store, Alexa Skills Kit (ASK) self-service APIs and tools, Alexa Skill interaction models, and Skill Application Logics hosted by Alexa, Alexa Plus, AWS, or another server; and

g. Software, hardware, and cloud infrastructure associated with any of the foregoing that implement Amazon's Alexa and Alexa Plus cloud-based voice service.

14. "ACCUSED FEATURES" collectively refer to the below features implemented or incorporated in the ACCUSED PRODUCTS:

a. The process by which the ACCUSED PRODUCTS converts users' utterances into text;

b. The process by which the ACCUSED PRODUCTS locates the right speechlet(s) to handle users' utterances;

c. The time duration and the turn duration that the ACCUSED PRODUCTS retains prior users' utterances;

  d. Using user profiles in generating responses to users' utterances, including generating kid's appropriate responses;

  e. Using device states to interpret users' utterances;

  f. Adaptive response, including adapting volumes of responses based on volumes of user's utterances and background noise;

  g. Evaluating sentiments and pronunciations from users' utterances;

  h. Anaphora resolution;

  i. Voice ID;

  j. Alexa wake up words recognition;

  k. Echo spatial perception;

  l. Amazon Ads, including voice ads and video ads, associated with the ACCUSED PRODUCTS;

  m. Celebrity voice;

  n. Amazon's product recommendation including Amazon's Choice, reorder notification and low stock notification; and

  o. Content sharing, including sharing music, photos and grocery lists among the users of the ACCUSED PRODUCTS.

15. "PRODUCT" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, program application or other collection of software, assemblage of Components/parts (either individually or collectively), process or method which is designed to function together electrically, mechanically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

16. "PERSON" and "PERSONS" includes both natural Persons and entities, including all predecessors in interest, groups, associations, partnerships, corporations, agencies, or any other legal, business or governmental entity. The acts "of" a Person are defined to include the acts of directors, officers, members, employees, agents, or attorneys acting on the Person's behalf.

17. "VOICE ID" means the feature YOU implemented or designed to recognize the person who makes the utterances to the ACCUSED AMAZON PRODUCTS.

18. "COMPONENT" means a constituent part of an assembly or system, including subassemblies, devices, modules, software, servers, and network and cloud infrastructure.

19. "THING" or "THINGS" has the meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure. "Thing" specifically includes, by way of example but not limitation, any disc, tape, or other electronic media storage device, any Product and any model, prototype or experimental device or part or assembly thereof.

20. "DOCUMENT" has the meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure. The term "Document" shall be interpreted in the broadest sense possible and includes Documents in any form, including by way of example and without limitation, originals and copies of letters, memoranda, notes, records, minutes, reports, notebooks, messages, telegrams, ledgers, legal instruments, legal opinions to the extent that they are not protected by the attorney client privilege or attorney work product doctrines, agreements, paper and electronic drawings, specifications, purchase orders, circuit schematics, block diagrams, manuals, test procedures, sketches, graphs, prints, rough drafts, secretarial notes, work pads, diaries, films, tapes, photographs, computer disks and other electronic media, books, publications, advertisements, literature, brochures, price lists, announcements, computer-based simulation tool input and output files, or other writings or tangible objects whether stored, produced, or reproduced mechanically, electrically, electronically, photographically or chemically. Any comment or notation appearing in any Document, and not part of the original text, is to be considered a separate "Document."

21. "COMMUNICATION" means any instance in which any Person has had contact with any other Person, including by any oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, by and to whomever made, including, but not limited to, any conversation, correspondence, agreement, note, e-mail, voicemail, or other transfer of Information, whether written, oral, electronic, or by any other means, and including any Document or other medium which abstracts, digests, records, incorporates, summarizes, describes

7

or transcribes any such Communication, or any subsequent review or discussion of such Communication, whether occurring at meetings or otherwise.

22. "INFORMATION" means and refers to Communications and Documents as those terms are defined herein.

23. "DATE" means the exact day, month, and year if ascertainable, or if not, YOUR best approximation thereof.

24. As used herein, the terms "relate," "refer," or "concern" (including any conjugation thereof) mean directly or indirectly concerning, regarding, evidencing, mentioning or describing, pertaining to, reflecting, being connected with, comprising or constituting a subject matter.

25. As used herein, the terms "each," "any," and "all" should be understood to include "each and every, any, and all."

26. As used herein, the terms "and" and "or" should be understood either disjunctively or conjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope.

27. As used herein, the terms "include," includes," and "including" mean "include, without limitation," "includes, without limitation," and "including, without limitation" respectively.

28. As used herein, use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; and the use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the request that which might otherwise be construed to be outside its scope.

29. The use of the present tense includes the past tense and vice versa.

30. Each Topic should be construed independently and without reference to any other Topic for the purposes of limitation.

31. Each Topic shall be answered in its entirety. If YOU cannot answer a Topic in its entirety, then YOU shall provide an answer to the extent possible with an explanation stating why a complete answer is not available.

32. If YOU have a good faith objection to any Topic or portion thereof, YOU shall state the specific nature of the objection and whether the objection applies to the entire Topic or to a part thereof. If YOU object to any part of a Topic, then YOU shall identify the part objected to and shall respond to the remainder.

33. These Topics shall be answered on the basis of YOUR entire knowledge from all sources, after an appropriate good faith inquiry has been made and a search has been conducted.

34. If YOU encounter any ambiguity in construing any Topic or any applicable definition or instruction, YOU should set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

35. If YOU withhold any information responsive to any Topic on the grounds of attorney-client privilege, work product immunity, or any other privilege or immunity, YOU should identify justification for the withholding (the nature of the privilege being claimed), and if the privilege is being asserted in connection with a claim or defense governed by state law, when any privilege is claimed, set forth the state privilege rule being invoked. For any privilege claimed, YOU must describe the nature of the information, documents, communications, or things not disclosed in a manner that will enable VOICEBOX to access the applicability of the privilege or protection.

## **DEPOSITION TOPICS**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, YOU shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on YOUR behalf with respect to the following matters:

1. The design, structure and operation of the ACCUSED FEATURES, and identify DOCUMENTS sufficient to show the said design, structure and operation.

2. For each ACCUSED FEATURE, all PRODUCTS that support or incorporate it.

3. For each ACCUSED FEATURE, facts regarding its research, engineering and development efforts, but not limited to, the analysis, research, testing, investigations, and/or modifications of prototypes and/or versions of it, and identify any related DOCUMENTS.

4. For each ACCUSED FEATURE, the identities and organization of COMPONENT or modules of source code.

5. For each ACCUSED FEATURE, identify the DATE it was released to public and the DATE it was discontinued if applicable.

6. Identify all PRODUCTS that support or intended to support Alexa Plus.

7. The technical details of Alexa Plus, including its design, functionality, structure, use and intended use.

8. The projected and actual revenue from YOU accrued, realized or projected from Alexa Plus.

9. Technical support and services YOU provided or offered relating to the ACCUSED PRODUCTS and the ACCUSED FEATURES.

10. The factual basis for YOUR contentions that the ACCUSED FEATURES and the ACCUSED PRODUCTS do not infringe ASSERTED PATENTS.

11. All COMMUNICATIONS between YOU and YOUR direct or indirect customers of the ACCUSED PRODUCTS regarding this lawsuit.

12. Any attempts or efforts by YOU to avoid or design-around any of ASSERTED PATENTS, including but not limited to, the financial costs and/or implications of making, testing, and implementing any actual or potential design-arounds, and the technical or commercial feasibility of implementing any actual or potential design-around.

13. Analyses, models, reports, or other evaluations performed by YOU concerning how Alexa and the Alexa Products or their features influence customer behavior, including spending patterns, service usage, or engagement with other Amazon platforms or services (e.g., Amazon.com, Amazon Music, Amazon Video, Amazon Shopping, Amazon Prime).

14. All internal metrics, usage statistics, dashboards, surveys, studies, reports, or other assessments concerning the use or performance of the ACCUSED FEATURES in the ACCUSED PRODUCTS, including monthly, quarterly, or annual data from June 2014 to the present, and the identification of any related DOCUMENTS or COMMUNICATIONS.

15. All analyses, models, forecasts, or internal communications used by AMAZON to attribute, estimate, or assess the financial contribution of the ACCUSED PRODUCTS to AMAZON's broader business or ecosystem, including but not limited to attribution of subscription revenue, advertising revenue, or downstream engagement value; and any methodologies, inputs, assumptions, or metrics used in connection with such analyses.

16. The creation, contents, and purpose of strategic planning documents relating to the ACCUSED PRODUCTS, including but not limited to OP1 memos, go-to-market plans, three-year strategic reviews, six-page memos, and other internal analyses addressing product performance, market impact, or customer engagement.

17. AMAZON's contracts, incentive programs, and payment arrangements relating to the installation or integration of Alexa or Alexa Products into third-party or OEM devices, including but not limited to bounties, per-unit fees, and amounts paid to third-party manufacturers or partners.

18. AMAZON's licensing, commercialization, or monetization of Alexa or Alexa Products to third parties, including but not limited to contracts, revenue sharing arrangements, fees, royalties, or other consideration received from OEMs, service providers, or other partners.

19. All internal metrics, usage statistics, dashboards, surveys, studies, reports, or other assessments concerning the use or performance of the ACCUSED FEATURES in the Alexa Products, including monthly, quarterly, or annual data from June 2014 to the present, and the identification of related DOCUMENTS and COMMUNICATIONS.

20. The earliest date when YOU became aware of ASSERTED PATENTS and RELATED PATENTS/APPLICATIONS and the manner in which YOU acquired that knowledge.

21. YOUR investigation, if any, regarding whether or not YOU infringed the ASSERTED PATENTS.

22. YOUR efforts, if any, to design around the ASSERTED PATENTS including any product comparisons, inspections, or analyses.

23. Any changes made to the architecture or functionality of Alexa or Alexa Plus in response to the jury verdict in VB Assets, LLC, v. Amazon.com Services LLC, C.A. No. 19-1410 (MN).

24. The identity of any products YOU contend constitute non-infringing alternatives to the ACCUSED PRODUCTS.

25. The revenues, profits (including gross and incremental profits), costs, margins, and other financial results associated with the ACCUSED PRODUCTS and the ACCUSED FEATURES, including but not limited to revenue derived from device sales, subscriptions, advertising, and e-commerce activity; and the reporting or tracking of such metrics in AMAZON'S ordinary course of business.

26. YOUR definition of the market, or markets, into which YOU sell or license, and/or offer to sell or license the ACCUSED PRODUCTS.

27. YOUR market share for sales or licensing of the ACCUSED PRODUCTS.

28. YOUR competitors and potential competitors with respect to the ACCUSED PRODUCTS, including the identity of YOUR competitors' products that compete with YOUR products.

29. Any product features that drive demand for the ACCUSED PRODUCTS.

30. YOUR policies and practices of purchasing, licensing, or obtaining any patented or proprietary technology and software for use with the ACCUSED PRODUCTS, including any methods of valuation or financial analysis of such actions.

31. Any process or procedure YOU have for evaluating patents or proprietary technology licenses.

32. The identity of all YOUR patents which you contend are embodied (or otherwise utilized) by the ACCUSED PRODUCTS and all supporting evidence.

33. All patent licenses including, but not limited to, the terms of the licenses that (i) YOU contend are comparable to a hypothetical negotiation in this ACTION or (ii) to which YOU are or were a party that concern the ACCUSED PRODUCTS.

34. All patent license negotiations, with any party, in which YOU have participated concerning the ACCUSED PRODUCTS.

35. YOUR responses to interrogatories served in this ACTION.

36. YOUR document retention policies and/or practices, including YOUR practices for backing up or otherwise preserving or destroying data.

37. YOUR systems and procedures for organizing, storing, archiving, and destroying design documents and computer program source code.

38. The identity of the persons most knowledgeable regarding the above topics.